UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ESSENCE CLINE-COLE**, individually, and on behalf of others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>**FABRI-KAL LLC**, a Delaware limited liability company,<br><br>   Defendant. | Case No.:<br><br>Hon.:<br><br>Mag.: |

**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

  Plaintiff Essence Cline-Cole ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's undersigned attorneys, hereby brings this Collective Action Complaint against Fabri-Kal LLC ("Defendant") to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*. Plaintiff's allegations herein are based upon knowledge as to matters relating to Plaintiff and upon information and belief as to all other matters.

**JURISDICTION AND VENUE**

  1. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

  2. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

  3. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate

1

commerce and therefore they are also covered by the FLSA on an individual basis.

4. Venue lies in in this District pursuant to 28 U.S.C. § 1391 because the Defendant is subject to personal jurisdiction in this District.

5. Defendant's principal place of business is located in Kalamazoo, Michigan, so jurisdiction lies in the Western District of Michigan.

## PARTIES

6. Plaintiff is an adult resident of Kalamazoo, Michigan and is currently employed with Defendant. Plaintiff's consent to join form is attached as **Exhibit A**.

7. Additional putative Collective members were or are employed by Defendant as hourly employees during the past three years and their consent forms will also be filed in this case.

8. Defendant is headquartered in Kalamazoo, Michigan.

9. Defendant is engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

10. Defendant's registered agent for purposes of service is CSC-Lawyers Incorporating Service (Company), 3410 Belle Chase Way, Ste. 600, Lansing, Michigan 48911.

## STATEMENT OF FACTS

11. Plaintiff began working for Defendant in May 2023, as a non-exempt, hourly employee, and is currently employed by Defendant.

12. Plaintiff's base hourly rate of pay is $19.96.

13. In addition to the base rate of pay, Defendant incorporated various types of routine and non-discretionary pay into its payment structure. For example, Defendant paid employees

quarterly performance bonus pay.

14. Throughout Plaintiff's employment with Defendant, Plaintiff was not earning a consistent and properly calculated overtime wage that included quarterly performance bonus pay and other non-discretionary remuneration in the regular rate for proper overtime calculation.

15. Defendant's hourly employees are classified as non-exempt employees, use the same timekeeping system(s), are subject to the same relevant timekeeping, pay and attendance policies; and have the same or similar duties/policies.

16. Throughout Plaintiff's employment with Defendant, Plaintiff was eligible for and received quarterly performance bonus pay and other non-discretionary remuneration.

17. However, Defendant failed to take the various routine and non-discretionary remuneration into consideration when calculating its hourly employees' regular rate of pay and resulting overtime premium rate. As a result, Defendant did not pay the proper overtime rate under the law.

18. As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

**The Regular Rate of Pay**

19. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

20. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular

hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

21. Defendant's quarterly performance bonus pay and other non-discretionary remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

22. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Defendant carries the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

23. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

24. Plaintiff's "total remuneration" included not only Plaintiff's base hourly pay, but also quarterly performance bonus pay and other non-discretionary remuneration. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in

4

the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

25. However, Defendant failed to incorporate the quarterly performance bonus pay or other non-discretionary pay into its hourly employees' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

26. Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and all other hourly employees are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

27. Plaintiff and all other hourly employees have regularly worked in excess of 40 hours a week and have been paid some overtime for those hours but at a rate that does not include Defendant's quarterly performance bonus pay or other non-discretionary bonus pay as required by the FLSA.

28. For example, Plaintiff's pay stub for the pay period 04/27/2025 through 05/03/2025 shows 42.78 hours of work, a base hourly rate of $19.96 (an overtime rate of $29.95 (1.5 times the base rate)), and gross earnings of $1,127.51, inclusive of $125.00 in quarterly performance bonus pay. However, the overtime rate does not account for quarterly performance bonus pay and, therefore, violates the FLSA.

29. Moreover, to the extent Defendant's non-discretionary bonuses were required to be allocated among multiple workweeks for purposes of calculating the FLSA regular rate (see e.g., 29 C.F.R. § 778.209), Defendant also failed to incorporate those bonuses into its calculations.

30. Defendant paid Plaintiff, and all other hourly employees, additional other non-

5

discretionary remuneration that Defendant failed to include in the regular rate calculation.

31. To the extent that any of Defendant's premium compensation paid to Plaintiff and all other hourly employees, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc.*, 308 F. 3d 580, 590-92 (6th Cir. 2002).

32. In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

33. As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff and all other hourly employees for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

**Pre-Shift/Post-Shift Off-the-Clock Work**

34. Defendant required Plaintiff and the hourly employees to change into ("don") and change out of ("doff") company-issued personal protection equipment ("PPE") before and after their work shifts in the designated location at Defendant's facility. Before their scheduled shifts, and before beginning production activities, Plaintiff and the hourly employees were required to put on their company-issued PPE, including but not limited to, hairnet, hardhat, beard net, steel-toed boots, cutting gloves, heat gloves, cutting sleeves, safety goggles and ear protection.

35. Defendant required Plaintiff and the hourly employees to wear PPE throughout their shifts.

36. The pre-shift donning process took Plaintiff and the hourly employees substantial time on a daily basis, ranging from 4 to 5 minutes per shift, all before the beginning of their scheduled shifts, and before they were clocked into Defendant's timekeeping system.

37. At the end of each shift, Plaintiff and the hourly employees were required to clock out before walking to the locker rooms to doff their PPE gear.

38. The post-shift doffing process took Plaintiff and the hourly employees substantial time on a daily basis, ranging from 4 to 5 minutes per shift, and happened after their scheduled shifts had ended, and after they were no longer clocked into Defendant's timekeeping system.

39. Consequently, Plaintiff and the other hourly employees performed uncompensated, off-the-clock work in the range of 8 to 10 minutes per shift.

40. The process of donning and doffing the PPE was compensable because Defendant required Plaintiff and the hourly employees to wear the PPE during their work shifts and to don and doff the PPE at the worksite.

41. Additionally, the PPE was an integral part of Plaintiff's and the hourly employees' principal work activities, as Plaintiff and the hourly employees could not safely perform their work activities without wearing the PPE.

42. Defendant, however, did not pay Plaintiff and the hourly employees for this compensable time. Instead, Defendant only paid Plaintiff and the hourly employees based on the time their scheduled shift started and the time their scheduled shift ended. Because Plaintiff and the hourly employees were required to don their PPE prior to the start of their shift time, and doff their PPE after the end of their shift time, Plaintiff and the hourly employees were not paid for their time beginning with their first principal activity of the workday and continuing through their last principal activity of the workday.

43. Defendant knew or could have easily determined how long it took Plaintiff and the hourly employees to complete their donning and doffing, and Defendant could have properly compensated Plaintiff and the hourly employees for this pre- and post-shift work, but deliberately chose not to.

### Donning and Doffing PPE at the Worksite are Principal Work Activities and are Compensable under the FLSA

44. Defendant required Plaintiff and the hourly employees to wear the PPE during their work shifts in order to protect the health and safety of their employees processing and packaging their products.

45. Additionally, the PPE is an integral and indispensable part of Plaintiff and the hourly employees' principal work activities, as Plaintiff and the hourly employees could not safely perform their production activities without wearing the PPE.

46. Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

47. The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

48. The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id*. at 250.

49. Consequently, the workers were issued old but clean clothes on-site, and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. *Id*. at 255. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*.

50. Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

51. More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend

9

putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at *https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.[1]

### The Off-the-Clock Work Results in Viable "Gap Time" Claim

52. "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

53. Plaintiff and the hourly employees regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

54. During the weeks that Plaintiff and the hourly employees did not work over 40 hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, for which the Defendant directly benefitted.

### Defendant Breached Its Agreement to Pay Plaintiff And the Hourly Employees Their Regular Hourly Rates for Each Hour Worked

---

[1] In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have endorsed the compensability of donning and doffing safety gear. *See, e.g.*, *Franklin v. Kellogg Co.,* 619 F.3d 620 (6th Cir. 2010) (holding that donning and doffing food protective clothing and safety gear was "integral and indispensable" to the principal activity of the employment"); *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004) (agreeing with district court "that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities"); *Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005) (holding donning and doffing protective gear was "integral and indispensable" to plaintiffs' principal activities of employment).

55. In consideration for Plaintiff's work as an hourly production employee, Defendant promised to pay Plaintiff a specific hourly wage for each hour Plaintiff worked for Defendant.

56. In approximately May 2023, Plaintiff accepted Defendant's offer of employment and began working for Defendant, creating a valid contract between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff the regular hourly rate of pay for each hour that Plaintiff worked for Defendant, including the donning/doffing described herein.

57. Throughout Plaintiff's employment with Defendant as an hourly employee, Plaintiff performed all of the work required by Defendant, including the donning/doffing described herein. In performing this work, Plaintiff fulfilled all of Plaintiff's duties under the contract.

58. However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the contract by not paying Plaintiff the promised hourly rate of pay for the donning/doffing described herein.

59. Defendant's failure to pay Plaintiff for each hour of work performed that was required of Plaintiff as an hourly production employee, was a material breach by Defendant of the parties' contract.

60. Because of Defendant's breaches, Plaintiff was deprived of wages owed to Plaintiff under the contract, including unpaid "gap time" wages.

61. Upon information and belief, all the other hourly employees who worked for Defendant had a similar valid contract with Defendant.

62. Upon information and belief, Defendant repeatedly and systematically breached its contracts with all the hourly employees it employed in the same way that it breached its contract with Plaintiff.

63. Defendant's contractual promises to pay Plaintiff and other hourly employees their promised hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to the Plaintiff.

64. Plaintiff and the hourly employees are owed wages at their promised hourly wage rates for the time that they worked off-the-clock during their employment with Defendant, including unpaid "gap time" wages.

65. Plaintiff and the hourly employees earned these wages the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and the hourly employees no later than the pay day for the period in which the off-the-clock work was performed.

66. The fact that Defendant deliberately chose not to compensate Plaintiff and the hourly employees for this work, and that the off-the-clock work was performed before Plaintiff's and the hourly employees' scheduled shifts, did not in any way relieve Defendant of its contractual obligations to pay the Plaintiff and the hourly employees for this time.

67. Defendant was contractually obligated to pay Plaintiff and the hourly employees their promised rates of pay for *all hours worked*, including hours worked before and after their scheduled work shifts, because that is what the parties agreed to in their contract.

**Defendant Benefitted from Plaintiff and the Hourly Employees' Off-the-Clock Work**

68. At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and the hourly employees in connection with the above-described donning/doffing and was aware it was occurring off the clock and without compensation.

69. Plaintiff and the hourly employees' donning/doffing activities conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their shift

and that Defendant saved the funds it would have spent had it paid Plaintiff and the hourly employees for that work.

70. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and the hourly employees.

71. At all relevant times, Defendant was able to track the amount of time Plaintiff and the hourly employees spent in connection with the donning/doffing activities. However, Defendant failed to do so and failed to pay Plaintiff and the hourly employees for all of the work they performed.

72. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the hourly employees in order to pressure them into performing the donning/doffing activities without pay.

73. Defendant expressly trained and instructed Plaintiff and the hourly employees to begin performing the above-described donning/doffing activities outside of their scheduled shift times, to ensure they were prepared to engage in their production activities prior to the start of their shifts.

74. At all relevant times, Defendant's policies and practices deprived Plaintiff and the hourly employees of wages owed for the donning/doffing activities they performed. Because Plaintiff and the hourly employees regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

75. Defendant knew or should have known that the time spent by Plaintiff and the hourly employees in connection with the donning/doffing activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

76. Despite knowing Plaintiff and the hourly employees performed work before and after their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre- and post-shift work and instead suffered and permitted it to happen.

77. Depending on when the uncompensated work was performed, unpaid wages related to the pre- and post-shift work described herein are owed to Plaintiff and the hourly employees at the FLSA mandated overtime premium or at their standard rate of pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

78. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all of Defendant's current and former hourly employees who worked for Defendant in the United States at any time in the past three years.

79. Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were subject to Defendant's pre-shift and post-shift off-the-clock work, and were eligible for and did receive quarterly performance bonus pay and other non-discretionary remuneration, but such pay was not calculated as part of their regular rate as required by the FLSA.

80. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

81. Resolution of this action requires inquiry into common facts.

82. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

83. Court-authorized notice pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other

means including text messaging and email and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

84. Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

85. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

86. Defendant is an employer within the meaning of 29 U.S.C § 203(d).

87. Plaintiff is an employee within the meaning of 29 U.S.C C 203(e).

88. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

89. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

90. As a result of Defendant's unlawful policy, in workweeks that the Plaintiff and other employees worked more than forty (40) hours, they were deprived of overtime wages in violation of the FLSA.

91. As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R.

15

§§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

92. Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their backpay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

93. Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II
## BREACH OF CONTRACT

94. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

95. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other putative collective member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the putative collective members performed on Defendant's behalf.

96. Defendant's contractual promises to pay Plaintiff and each putative collective member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the putative collective members.

97. Plaintiff and every other putative collective member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and

16

carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the donning/doffing activities described herein.

98. By not paying Plaintiff and every other putative collective member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each putative collective member.

99. Plaintiff's and the putative collective members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

100. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the putative collective members have been damaged in an amount to be determined at trial.

## COUNT III
## UNJUST ENRICHMENT

101. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

102. At all times relevant to this action, Defendant promised Plaintiff and every other putative collective member a pre-established hourly rate in consideration of the work duties Plaintiff and the putative collective members performed for the benefit of Defendant.

103. Upon information and belief, each putative collective member, including Plaintiff, was paid a base hourly rate.

104. Plaintiff and every other putative collective member relied upon Defendant's promise for the pre-established hourly rate and performed by doing their jobs and carrying out the work they performed.

105. By not paying Plaintiff and every other putative collective member the promised

base hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant was unjustly enriched.

106.    Plaintiff and the putative collective members performed off-the-clock work tasks at the request of and without objection by Defendant.

107.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other putative collective member and enjoyed the benefits derived therefrom.

108.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other putative collective member to finance their various business expenditures.

109.    Defendant was unjustly enriched by the retention of monies received pursuant to the sales and services Plaintiff and the putative collective members procured on behalf of Defendant, without having compensated Plaintiff or the putative collective members for the same.

110.    Plaintiff and the putative collective members suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the putative collective members were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

111.    As a direct and proximate result of Defendant's actions, Plaintiff and every other putative collective member have suffered damages, including, but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of Plaintiff and all others similarly situated, requests the following relief:

a.    Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone

      number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.    An Order designating Plaintiff as representative of the FLSA Collective, and the undersigned as counsel for the same;

c.    A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

e.    A monetary judgment awarding full back pay and an equal amount in liquidated damages;

f.    An award of pre-judgment and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' fees, and an award of a service payment to the named Plaintiff; and

h.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Date: August 13, 2025                   Respectfully submitted,

                                             */s/ Kevin J. Stoops*
                                             Kevin J. Stoops (P64371)
                                             **SOMMERS SCHWARTZ, P.C.**
                                             One Town Square, 17th Floor
                                             Southfield, Michigan 48076
                                             (248) 355-0300
                                             kstoops@sommerspc.com

                                             *Attorneys for Plaintiff and*
                                             *the Proposed Collective*